IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **LEIDOS, INC.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**PROFIT LTD. CONSULTING GROUP and YIORGAS TREPEKLIS,**<br><br>*Defendants*. | Civil Case No. 1:23-cv-1078 |

## COMPLAINT

### Introduction

1. This is a diversity action for damages and injunctive relief in connection with the breach of a release and settlement agreement.

2. In August of 2011, Plaintiff Leidos, Inc., entered into a release and settlement agreement with Defendants Profit Ltd. and Profit's president Yiorgas Trepeklis, through which Defendants unequivocally and forever released claims for further commission payments under a representative agreement that Profit and Leidos had entered into in September of 2002. The sole exception to the release was for claims pertaining to three payments from Leidos to Profit already required by a final arbitration award that had issued in February of 2011. Leidos timely made those payments and the additional commission payments it agreed to make in release and settlement agreement to resolve fully and finally all of the parties' disputes.

3. More than a decade later, and in breach of the release and settlement agreement, Profit, under the direction of Trepeklis, initiated an arbitration with the International Centre for

Dispute Resolution, asserting claims against Leidos for more than €2,100,000 in additional commission payments under the parties' 2002 representative agreement.

4. Leidos now brings this breach of contract action seeking compensatory, declaratory and injunctive relief against Profit and Trepeklis.

## Parties

5. Leidos (formerly Science Applications International Center or SAIC) is a corporation organized under the laws of Delaware with its headquarters and principal place of business at 1750 Presidents Street in Reston, Virginia. Leidos is a recognized global leader in the development and application of technology to solve important problems in the defense, intelligence, homeland security, civil, and health markets.

6. Profit is a Greek entity that purports to have its principal place of business in Athens, Greece.

7. Trepeklis is a citizen and resident of Greece and the president of Profit.

## Jurisdiction and Venue

8. This Court has personal jurisdiction over Defendants Profit and Trepeklis because the claims in this action arise out of and relate to a contract they made and entered into with a citizen and resident of the Commonwealth of Virginia. As part of that contract, Profit and Trepeklis expressly consented to being subject to the personal jurisdiction of this Court for this action and the claims Leidos asserts herein, and also irrevocably waived any objection to insufficiency of service of process for this action and the claims Leidos asserts herein.

9. This Court has subject matter jurisdiction under 28 U.S. Code § 1332(a)(2) as this is a civil action where the matter in controversy exceeds the sum of $75,000 exclusive of interest

and costs, and is between a citizen of the Commonwealth of Virginia and citizens of the Hellenic Republic ("Greece").

10. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) as a substantial portion of the acts giving rise to the claims occurred in this District. Alternatively, venue in this District is proper under 1391(b)(3) because at least one of Defendants is subject to personal jurisdiction in this District. Further, each Defendant has irrevocably waived any objection to venue or based on forum non-conveniens for this action and the claims Leidos asserts herein.

## Background

11. In September 2002, Leidos (then SAIC) and Profit entered into a Representative Agreement through which Leidos appointed Profit as a non-exclusive representative within a territory comprising Greece, Bulgaria, Albania, Skopje, Romania and Cyprus.

12. Under the Representative Agreement, Profit agreed to assist Leidos in pursuing certain opportunities for the sale within the territory of certain of Leidos products and services for which Profit would be paid commissions.

13. Among the opportunities for which Leidos authorized Profit to assist was the sale of an Olympic Security system to Greece, which was hosting the 2004 Summer Olympics.

14. The Hellenic Republic (also Greece or Greek State) ultimately contracted with Leidos in May 2003 for a sophisticated security system ("C4I System") to ensure the safety of the 2004 Summer Olympics ("C4I Contract").

15. In accordance with the Representative Agreement, Leidos made pro rata commissions payments at the rate of 5.58% on each of the payments Leidos received from the Greek State for Phase I of the C4I System. Profit accepted each of the pro rata payments.

16. By 2010, Leidos had paid Profit a total of €6,600,000 in commissions on the total amount of €118,329,638 in payments that Leidos had received from the Greek State for Phase I.

17. Leidos also made other commission payments to Profit under the Representative Agreement for other business.

18. In 2009, Leidos initiated an arbitration against the Greek State and asserted claims relating to the Greek State's failure to pay amounts due for various aspects of the C4I System.

19. In 2010, as Leidos's arbitration against the Greek State was pending, Profit initiated an arbitration against Leidos claiming that Leidos owed Profit an additional €2,200,000 in commission payments for Phase I of the C4I System ("Profit's First Arbitration"). Profit also asserted claims relating to payments for other business.

20. In a final award dated February 4, 2011 ("Award"), the tribunal in Profit's First Arbitration—the Honorable Carl West Anderson (Retired)—determined that: (1) the parties had agreed that Leidos would pay commissions to Profit for Phase I of the C4I System at the rate of 5.58% on a pro rata basis as Leidos received payments from the Greek State, and (2) Profit was not entitled to the additional Phase I commissions it had demanded. A copy of the Award is attached as **Exhibit 1**.

21. As to Profit's claim for additional commissions for Phase I, the Tribunal specifically ruled in the Award that:

> Claimant takes nothing by its Claim No. 1, having failed to provide by a preponderance of evidence that it is entitled to anything. Therefore, Award issues in favor of Respondent on Claim No. 1. . . . This Award is in full settlement of all issues submitted to this Arbitration. Any and all claims and counterclaims not expressly granted herein are, hereby DENIED. (Award, pgs.6-7, ¶¶ 1, 7.)

22. As to Profit's other claims, the Award required Leidos to make the following three payments:

>(1) the amount of €339,812.95 for the amount in principal and interest awarded to Profit for Claim No. 2 in the Arbitration concerning payments for certain add-ons (Award, p.6 ¶2; *see also* Award, p.4-5 ¶¶ 10-14);
>
>(2) the amount of US$184,844.67 on account of attorney fees, costs and expenses incurred in the Arbitration (Award, p.7 ¶5); and
>
>(3) the amount of US$28,479.43, representing the portion of the AAA administrative filing and case service fees for the Arbitration in excess of the apportioned costs previously incurred by Profit (Award, p.7 ¶6).

23. The Tribunal awarded Profit no other relief, and expressly confirmed that: "This Award is in full settlement of all issues submitted to this Arbitration. Any and all claims and counterclaims not expressly granted herein are, hereby DENIED." (Award, p.7 ¶7.)

24. Profit confirmed its understanding that the Arbitrator determined that Profit had agreed Profit would only be entitled to commissions for Phase I at the rate of 5.58% on amounts that Leidos had actually received for Phase I from the Greek State.

25. Indeed, six months later, on August 3, 2011 and to resolve outstanding payment issues and put to rest any claims for further payments, Leidos entered into a Release and Settlement Agreement ("Release") with Profit and Trepeklis through which Leidos agreed to make additional payments to Profit totaling €130,498 and through which Profit and Trepeklis each:

>unequivocally, completely and forever releases, acquits, and discharges [Leidos] from any and all actions, causes of action, remedies, suits, judgments, executions, claims, demands, loss, liability, harm and/or damages that arise under or relate in any way to: 1) the Representative Agreement, **with the sole exception of any payment required by the Award**; and 2) SAIC's C4I Contract and any modifications (Contract No.020A/03). . . . [and] agree that they shall not assist, aid or abet any person or entity who brings a claim or lawsuit of any kind against [Leidos] or any of its subsidiaries.

A copy of the Release is attached hereto as **Exhibit 2**.

5

26. The €130,498 in additional payments to Profit included €93,498 in commissions for the "airship" component of Phase I of the C4I System and €37,000 for business other than the C4I System.

27. Consistent with Profit's recognition that it was entitled to commissions for Phase I of the C4I System only at the rate of 5.58% on amounts Leidos actually received from the Greek State, the €93,498 airship commission payment equates to 5.58% of the €1,676,296 airship payment that Leidos received from the Greek State. And Profit expressly agreed in the Release that the €93,498 airship payment was "not in dispute."

28. Leidos made each of the three payments to Profit required by the Award and the additional €130,498 set forth in the Release.

29. In the Release, Leidos and Profit expressly agreed that:

> Exclusive jurisdiction over any dispute, action, or suit arising from this Agreement shall be in any court of appropriate jurisdiction located in the State of Virginia, and the Parties by this Agreement expressly subject themselves to the personal jurisdiction of that court for the resolution of any dispute, action or suit arising in connection with this Agreement. Each of the Parties herby irrevocably waives any objection, including as to insufficiency of servicer of process, laying of venue, or based on forum non-conveniens, that the Parties may now have or hereafter have to the bringing of any such dispute, action, or proceeding in such courts.

30. In 2013, the Tribunal in Leidos's arbitration against the Greek State awarded Leidos the sum of €39,980,798, as follows:

- €17,196,794 for VAT less withholding tax;

- €18,997,994 for Leidos's damages with the Greek State's improper draw down on letters of guarantees and associated costs;

- €28,750 for the value of decommissioning work Leidos provided to the Greek state, which was not part of the contract;

- €1,066,378 for pre-award interest;

6

- €162,500 for ICC arbitration fees and costs;
- €5,266,975 for Phase I work; and
- a deduction of €2,738,594 for set-offs in the Greek State's favor on other work.

31. After several years and multiple enforcement actions brought by Leidos in courts in the United States and overseas, the Greek State finally paid certain amounts awarded to Leidos, including the €5,266,975 for Phase I work.

32. Notwithstanding and in direct breach of the Release, a lawyer purporting to represent Profit sent a demand letter to Leidos in January 2020 for additional commissions and interest under the Representative Agreement and relating to the C4I Contract to which it is not entitled ("First Demand Letter"). A copy of the First Demand Letter is attached as **Exhibit 3**.

33. Specifically, the lawyer demanded that Leidos pay Profit €2,200,000 in additional commissions and more than €800,000 in interest. Leidos responded through counsel, but heard nothing further from the attorney.

34. Then, in November 2021, a different lawyer purporting to represent Simos Dimas, an individual associated with Profit, sent a letter to Leidos demanding that Leidos pay to Profit and "individual commission beneficiaries" €2,200,000 in additional commissions and €264,000 in interest ("Second Demand Letter"). A copy of the Second Demand Letter is attached as **Exhibit 4**.

35. The €2,200,000 in commissions demanded in each of the two letters equates to more than 40% of the Greek State's additional €5,266,975 payment to Leidos for Phase I work.

36. Leidos has incurred time and expenses, including attorney fees and expenses, responding to these demands that the Release expressly bars.

37. Subsequent to the Second Demand Letter, counsel for the parties exchanged a series of written communications and held an in-person meeting. But Profit and its counsel fell silent after May 19, 2022.

38. Notwithstanding and in direct breach of the Release, Profit reappeared in June 2023 and initiated another arbitration ("Profit's Second Arbitration") asserting claims that arise under the Representative Agreement and relate to the C4I Contract for additional commission payments of more than €2,100,000 to which the Award ruled Profit was not entitled. A copy the notice of arbitration, including exhibits thereto, that Profit submitted to the ICDR in Profit's Second Arbitration is attached as **Exhibit 5**.

39. The €2,106,502 in additional commissions that Profit demands in Profit's Second Arbitration equates to 40% of the Greek State's additional €5,266,975 payment to Leidos for Phase I work.

40. Profit argues that its claims in this arbitration are for payments "required by the Award" and thus fall within the exception to the Release, but the Award identifies no such required payments. And Profit has not initiated proceeding to confirm, enforce, or collect on the Award, but instead has initiated a new arbitration asserting claims for breach of the Representative Agreement.

41. Leidos has incurred and continues to incur time and expense, including attorney fees and expenses, responding to claims in Profit's Second Arbitration that the Release expressly bars.

## Count I
### (Breach of Contract Against Defendant Profit)

42. Leidos incorporates by reference the allegations in paragraphs 1 through 41 as though set fully set forth herein.

43. Leidos and Profit entered into a binding contract, the Release, through which Leidos agreed to make additional payments totaling €130,498 to Profit in exchange for Profit forever and unequivocally releasing all claims for additional commissions under the Representative Agreement or relating to the C4I Contract.

44. Leidos has fully performed its obligations under the Release, including making the €130,498 in additional payments to Profit specified in the Release.

45. In breach of the Release, Profit has asserted demands to Leidos and initiated Profit's Second Arbitration against Leidos seeking additional commissions under the Representative Agreement and relating to the C4I Contract beyond the payments required by the Award.

46. Profit's breach has harmed Leidos by forcing Leidos to incur time and expense, including attorney fees and expenses, responding to Profit's demands and defending itself in Profit's Second Arbitration.

## Count II
**(Breach of the Contract Against Defendant Trepeklis)**

47. Leidos incorporates by reference the allegations in paragraphs 1 through 46 as though fully set forth herein.

48. Leidos, Profit and Trepeklis entered into a binding contract, the Release, through which Leidos agreed to make additional payments totaling €130,498 to Profit in exchange for Profit and Trepeklis (1) forever and unequivocally releasing all claims for additional commissions under the Representative Agreement or relating to the C4I Contract and (2) agreeing that they shall not assist, aid or abet any person or entity who bring a claim or lawsuit of any kind against Leidos (or any of its subsidiaries).

49. Leidos has fully performed its obligations under the Release, including making the €130,498 in additional payments to Profit specified in the Release.

50. In breach of the Release, Trepeklis has authorized Profit to assert demands to Leidos and initiate Profit's Second Arbitration against Leidos seeking additional commissions under the Representative Agreement and relating to the C4I Contract beyond the payments required by the Award.

51. In breach of the Release, Trepeklis has assisted, aided and abetted Profit in bringing the claims asserted by Profit against Leidos in Profit's Second Arbitration, and continues to do so.

52. Trepeklis's breach of the Release has harmed Leidos by forcing Leidos to incur time and expense, including attorney fees and expenses, responding to Profit's demands and defending itself in Profit's Second Arbitration.

## Prayer for Relief

WHEREFORE, Leidos prays for judgment and relief against Profit and Trepeklis as follows:

a. judgment in favor of Leidos and against Profit and Trepeklis on each of Leidos's claims;

b. an award of compensatory damages—including but not limited to the costs of Profit's Second Arbitration and Leidos's legal and other expenses in connection with responding to Profit's demands and defending itself in Profit's Second Arbitration—in an amount to be shown according to proof;

c. a declaration that the Release bars Profit and Trepeklis from asserting any claim or demand arising out of the Representative Agreement or relating to the C4I Contract;

d. orders preliminarily and permanently enjoining Profit from proceeding with Profit's Second Arbitration and maintaining the claims asserted therein;

e. orders preliminary and permanently enjoining Trepeklis from assisting or aiding Profit in any way with Profit's Second Arbitration and maintaining the claims asserted therein;

f. an order permanently enjoining Profit or Trepeklis from initiating or maintaining any action or claim against Leidos that arises out of the Representative Agreement or relates to the C4I Contract;

g. Leidos's attorneys fees and other costs to the extent allowed by law; and

h. such further and other relief as the Court deems just and proper.

Dated: August 15, 2023

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

By: /s/ *John W. Lomas, Jr.*
John W. Lomas, Jr.
VA Bar No. 73148
700 6th St. NW
Washington, DC 20001
Email: johnlomas@eversheds-sutherland.us
Phone: (202) 220-8049

William T. O'Brien (*pro hac vice* application forthcoming)
Ariana Cheng (*pro hac vice* application forthcoming)
williamobrien@eversheds-sutherland.us
arianacheng@eversheds-sutherland.us

**ATTORNEYS FOR PLAINTIFF LEIDOS, INC.**